```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
UNITED STATES OF AMERICA,                             :
                                                      :         20-CR-58 (VSB)
              v.                                      :
                                                      :         **OPINION & ORDER**
DANA MCCANN,                                          :
                                                      :
                      Defendant.                      :
                                                      :
------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/15/2021
```

VERNON S. BRODERICK, United States District Judge:

Before me is the motion of Dana McCann ("Defendant" or "McCann") seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and requesting that I reduce his sentence to time served and supervised release with a condition of community confinement ("Motion"). (Comp. Rel. Mot. 1; Reply 1.)[1] Because McCann has demonstrated extraordinary and compelling circumstances, and the § 3553(a) factors weigh in favor of reducing McCann's sentence, McCann's Motion is GRANTED.

## I. Background and Procedural History

On January 22, 2020, McCann pleaded guilty to one count of aggravated identity theft. (*See* 1/22/2020 Minute Entry.) On May 12, 2020, I sentenced McCann to a mandatory 24 months' imprisonment, one year of supervised release, $100 special assessment, and $436,491.71 in restitution. (Doc. 19 at 22–23; Doc. 17.)

On February 24, 2021, McCann filed the instant motion for compassionate release. (Docs. 21–23.) I then directed the Government to file a response addressing: (1) whether or not

---

[1] "Comp. Rel. Mot." refers to McCann's memorandum of law in support of his motion for compassionate release, filed on February 24, 2021. (Doc. 22.) "Reply" refers to McCann's reply in support of his motion for compassionate release, filed on March 10, 2021. (Doc. 29.)

Defendant is eligible for release to a half-way house; (2) whether or not the Bureau of Prisons intends to release him; and (3) whether or not Defendant is eligible to be vaccinated, and if so, when he would most likely receive the vaccine. (Doc. 25.) On March 4, 2021, the Government filed an opposition to McCann's Motion, indicating that McCann was ineligible for halfway house placement because of a pending detainer, that McCann had not yet received the vaccine, and that the Government could not advise as to when McCann would potentially be vaccinated. (Govt. Opp. 3, 6.)[2] On March 10, 2021, McCann filed a reply in support of his Motion. (Doc. 29.)

At the time of his Motion, McCann was 68 years old. (Comp. Rel. Mot. 1.) McCann was detained at FCI Otisville in Orange County, New York ("Otisville") when he filed the Motion. (Govt. Opp. 2.) According to the Government, although the Bureau of Prisons ("BOP") had designated McCann to FCI Oakdale I in Louisiana ("Oakdale I") his transfer was "paused" because he filed a request under the Interstate Agreement on Detainers Act ("IADA"). (*Id*.) "Had [McCann] not filed the IADA request, the BOP would have moved [him] from FCI Otisville at the end of February 2021." (*Id*. at 3.) At some point after filing his reply on March 10, 2021, McCann was transferred to Oakdale I. *See Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 14, 2021).

## II. Discussion

McCann seeks compassionate release on numerous grounds, including that his age and medical conditions make him more susceptible to severe illness from COVID-19, his harsh conditions of confinement, and his rehabilitation and support from his sister. (Comp. Rel. Mot.

---

[2] "Govt. Opp." refers to the Government's letter submitted in opposition to McCann's Motion, filed on March 4, 2021. (Doc. 28.)

2

10–16.)  The Government opposes his Motion on the grounds that McCann has failed to demonstrate extraordinary and compelling reasons warranting a sentencing reduction, and that the § 3553(a) factors do not support an early release.  (Govt. Opp. 5–7.)  For the reasons that follow, McCann's motion is GRANTED.

### A. *Applicable Law*

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020).  Section 3582(c)(1)(A)(i), the compassionate release statute, provides one such exception.  The compassionate release statute permits a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[3]  18 U.S.C. § 3582(c)(1)(A).  The moving party bears the burden of proving that extraordinary and compelling reasons exist.  *See United States v. Ebbers*, 432 F. Supp. 3d 421, 426–27 (S.D.N.Y. 2020) (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.")); *see also United States v. Clarke*, No. 09 Cr. 705(LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) ("[I]f the defendant seeks decreased punishment, he or she has the

---

[3] The relevant Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13, although I note that the Sentencing Guidelines have not yet been revised to take into account the First Step Act.  *United States v. Russo*, 454 F. Supp. 3d 270, 273 (S.D.N.Y. 2020).  However, the Second Circuit recently interpreted § 1B1.13 in light of the First Step Act and concluded that when a "compassionate release motion is not brought by the BOP Director, Guideline § 1B1.13 does not, by its own terms, apply to it."  *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020).  "Because Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling."  *Id*.  "However, courts remain free – even after *Brooker* – to look to § 1B1.13 for guidance in the exercise of their discretion."  *United States v. Burman*, No. 16 Cr. 190 (PGG), 2021 WL 681401, at *5 (S.D.N.Y. Feb. 21, 2021) (internal quotation marks omitted).

burden of showing that the circumstances warrant that decrease.") (quoting *Butler*, 970 F.2d at 1026); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

Until recently, a court could not order compassionate release unless the BOP requested such relief on a prisoner's behalf by filing a motion. *See* U.S.S.G. § 1B1.13 (stating, among other things, that "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)"); *see also Gotti*, 433 F. Supp. 3d at 614 ("Until last December, a court could not modify a defendant's duly-imposed sentence on compassionate release grounds unless it received a motion from the Bureau of Prisons asking that the court consider such modification."). However, in December 2018, Congress passed the First Step Act, which did away with the BOP's unilateral ability to deny a prisoner compassionate release but did not remove the BOP from the process entirely. *See Gotti*, 433 F. Supp. 3d at 614–15. The statute is clear that a court may only grant compassionate release "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

B.  *Application*

At the outset, I note that the Government does not address and therefore does not seem to dispute that McCann has exhausted his administrative remedies.[4] On April 2, 2020, through

---

[4] Arguably, if the exhaustion requirement is considered a claims-processing rule, not a jurisdictional requirement—an issue the Second Circuit has not yet resolved, *see United States v. Monzon*, No. 99cr157 (DLC), 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020)—the Government has waived any argument regarding exhaustion, *see United*

4

counsel, McCann filed a request for compassionate release with the Warden of the Metropolitan Detention Center in Brooklyn, New York ("MDC"), where he was incarcerated at the time. (Tran Decl. Ex. C.)[5]  On December 22, 2020, McCann filed another request.  (Tran Decl. Ex. D.) Although not included in the record, the Government indicates that on April 19, 2020, MDC's Warden denied McCann's request for compassionate release.  (Govt. Opp. 2.)  Because McCann has exhausted his administrative remedies, I move to consideration of the merits of his Motion.

McCann is currently 68 years old.  (Tran Decl. ¶ 4.)  He suffers from chronic asthma, an inguinal hernia, and a lipase enzyme deficiency which prevents his body from metabolizing animal meats.  (Comp. Rel. Mot. 3–4; Tran Decl. ¶¶ 6–9; Tran. Decl. Ex. B.)  While incarcerated, MDC failed to provide him with a meal plan that aligns with his dietary restrictions; this resulted in him choking on his food and losing more than 25 pounds in his first month of incarceration.  (Comp. Rel. Mot. 4; Tran Decl. ¶¶ 8–9.)  The Government does not seriously dispute the existence of McCann's various medical conditions; however, it does dispute whether any of those medical conditions, including McCann's asthma, are sufficiently severe to place him at increased risk of serious illness or death should he contract COVID-19.  (Govt. Opp. 5–6.)

According to the Centers for Disease Control and Prevention ("CDC"), moderate to severe asthma can make a person more likely to get severely ill from COVID-19, and a person with moderate to severe or uncontrolled asthma is more likely to be hospitalized from COVID-19.  *People with Certain Medical Conditions*, Centers for Disease Control and Prevention,

---

States v. Gentille, No. 19 CR. 590 (KPF), 2020 WL 1814158, at *3 (S.D.N.Y. Apr. 9, 2020) (agreeing with Government "that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, but rather is a claims-processing rule that the Government can waive by failing to raise an exhaustion argument.").

[5] "Tran Decl." refers to the declaration of attorney Tammy Tran, filed in support of McCann's Motion on February 24, 2021.  (Doc. 23.)  The declaration includes statements that McCann affirmed by phone on February 3, 2021.  (*Id.* ¶ 2.)

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 14, 2021); *People with Moderate to Severe Asthma*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited July 14, 2021). Additionally, "[o]lder adults are more likely to get very sick from COVID-19. . . . The risk increases for people in their 50s and increases in 60s, 70s, and 80s." *Older Adults and COVID-19*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited July 14, 2021.) Given that I have received no indication that McCann has been vaccinated, McCann has an increased risk of becoming severely ill if he is infected with COVID-19. These circumstances cut in favor of finding extraordinary and compelling reasons for a sentence reduction. *See United States v. Hernandez*, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020) (granting sentence reduction where a defendant had asthma, and explaining "[t]he COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration. COVID-19 presents a heightened risk for incarcerated defendants . . . with respiratory ailments such as asthma."); *United States v. Rodriguez*, 492 F. Supp. 3d 306, 310 (S.D.N.Y. 2020) ("Since the onset of the coronavirus pandemic, courts have consistently held that the presence of underlying health conditions that increase the risks associated with COVID-19 can constitute extraordinary and compelling reasons for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)"); *United States v. Zukerman*, 451 F. Supp. 3d 329, 334–35 (S.D.N.Y. 2020) (granting compassionate release request of 75-year-old defendant "because of the great risk that COVID-19 poses to an elderly person with underlying health problems") (collecting cases); *United States v. Pena*, 459 F. Supp. 3d 544, 550–52 (S.D.N.Y. 2020) (finding extraordinary and compelling reasons based

on the danger of COVID-19 where defendant was 60 years old and suffered from underlying health conditions).

The harshness of McCann's conditions of confinement also weigh in favor of finding extraordinary and compelling reasons for reducing his sentence. Recently, I explained that I agreed with Judge Rakoff's recognition that "the pandemic, aside from posing a threat to [a defendant's] health, has made [a defendant's] incarceration harsher and more punitive than would otherwise have been the case." *United States v. Reiter*, 87-CR-132 (VSB), 2021 WL 1424332, at *8 (S.D.N.Y. Apr. 15, 2021) (quoting *Rodriguez*, 492 F. Supp. 3d at 311). "Federal prisons, as prime candidates for the spread of the virus . . . have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal." *Id.* McCann has been no stranger to these restrictions. At both the MDC and Otisville,[6] McCann was forced to remain in his cell for more than 22 hours a day. (Comp. Rel. Mot. 5; Tran Decl. ¶ 10.) There have been no opportunities for employment, library access, movement, or worship at MDC or Otisville. (*Id.*) When he filed his reply, McCann had no access to a computer, or the email system used by BOP that allows inmates to communicate with the outside world. (*See* Reply 6 & n.9.)

In addition, McCann has been forced to live in constant fear of contracting COVID-19.[7] The MDC, where McCann was incarcerated until January 2021, had at least 240 positive COVID-19 cases as of January 8, 2021.[8] (Comp. Rel. Mot. 12.) While incarcerated at the MDC,

---

[6] McCann was transferred to Otisville in January 2021. (Tran Decl. ¶ 5.)

[7] I note that McCann's arguments about the conditions at the MDC and Otisville are moot to the extent that they are offered to demonstrate the current and ongoing risk of COVID-19 he faces because McCann has since been transferred; however, I consider these circumstances to the extent that they have made McCann's term of imprisonment more severe.

[8] Currently, the MDC has zero positive inmates and 5 positive staff. *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 14, 2021). One inmate at the MDC died from COVID-19, and

McCann received only two COVID-19 tests. (Tran Decl. ¶ 11.) McCann was transferred to Otisville in January 2021, (Tran Decl. ¶ 5), which had at least 56 positive COVID-19 cases as of February 3, 2021,[9] (Comp. Rel. Mot. 12). As of March 10, 2021, McCann had not received a single COVID-19 test since arriving at Otisville. (Reply 4.) McCann has never received hand sanitizer and was provided with a total of 6 face masks in nearly a year. (Comp. Rel. Mot. 5; Tran Decl. ¶¶ 11–12.)

After filing his reply on March 10, 2021, McCann was transferred to FCI Oakdale I. *See Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 14, 2021); (*see* Govt. Opp. 2) (explaining that McCann was designated for FCI Oakdale I.) Oakdale,[10] according to news reports, has been ravaged by the COVID-19 pandemic, and inmates have suffered due to BOP incompetence. *See, e.g.*, Clare Hymes, *Federal prison didn't isolate inmates who tested positive for coronavirus, report finds*, CBS News (Nov. 17, 2020, 7:30 PM), https://www.cbsnews.com/news/federal-prison-coronavirus-outbreak-fci-oakdale/ (citing to report finding that Oakdale officials failed to isolate nearly 100 asymptomatic inmates who tested positive for COVID-19); Kimberly Kindy, *An explosion of coronavirus cases cripples a federal prison in Louisiana*, Wash. Post (March 29, 2020), https://www.washingtonpost.com/national/an-explosion-of-coronavirus-cases-cripples-a-federal-prison-in-louisiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.html; Kimberly Kindy, *Inside the deadliest federal prison, the seeping coronavirus creates fear and danger*, The Washington Post (Apr. 10, 2020), https://www.washingtonpost.com/national/inside-the-

---

327 inmates have recovered. *Id.*

[9] Currently, Otisville has one positive staff and 87 recovered inmates. *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 14, 2021).

[10] Oakdale refers the Federal Correctional Complex that includes both FCI Oakdale I and FCI Oakdale II.

deadliest-federal-prison-the-seeping-coronavirus-creates-fear-and-danger/2020/04/09/deeceb6e-75b4-11ea-a9bd-9f8b593300d0_story.html. Currently at Oakdale, there are 6 positive staff members, 9 inmates have died, and nearly 500 inmates have recovered. *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 14, 2021). Given that each of the three facilities where McCann has been incarcerated have been infiltrated by COVID-19 at some point—McCann has served more than a year of his sentence in perilous conditions—I find that this weighs in favor of finding extraordinary and compelling reasons for reducing his sentence.

Finally, I note that McCann does not have a single disciplinary infraction; he tutored inmates in GED courses prior to the COVID-19 lockdown; and he intends to live close to his sister in Jacksonville, Florida, who is willing to support McCann as he readjusts. (Comp. Rel. Mot. 16–17; Tran Decl. ¶¶ 13, 15–16.)

For the aforementioned reasons, I find that the circumstances presented here—the heightened medical risk that McCann faces if he contracts COVID-19, his harsh conditions of confinement, his unblemished record during incarceration, and his familial support—are extraordinary and compelling so as to justify compassionate release.

This conclusion is further supported by application of the § 3553(a) factors. McCann has served all but 15 days of his sentence. He was convicted of a non-violent offense, and recidivism is unlikely due to his advanced age. *See* United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* 3, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (key findings included that "[o]lder offenders were substantially less likely than younger offenders to recidivate following release").

Accordingly, because I find that extraordinary and compelling reasons warrant a reduction of McCann's sentence and that the § 3553(a) factors support a reduction of his sentence, I grant McCann's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and order his release.

### III. Conclusion

For the reasons stated above, McCann's motion for compassionate release is GRANTED. Accordingly, it is hereby:

ORDERED that McCann's sentence is reduced to time served.

IT IS FURTHER ORDERED that McCann be released from BOP custody effective immediately.

The Clerk of Court is respectfully directed to close the open motion at docket entry 21.

SO ORDERED.

Dated: July 15, 2021
New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge